This is a land dispute. The plaintiff, Virginia Jackson, filed an action to quiet title in the Circuit Court of Bibb County on October 2, 1986. The defendant, Richard Bell, denied the averments of the complaint, both in his individual capacity and in his representative capacity for the estate of his grandfather, Richard Anderson. The trial judge held an ore tenus hearing and viewed the land. He then rendered a judgment *Page 43 
quieting title in Jackson. Bell appealed.
The case was basically tried as a boundary line dispute. The issue was whether a certain barbed wire fence was the boundary line between the Bell and Jackson properties. The disputed parcel of land is approximately 3.34 acres of undeveloped pastureland in Bibb County. Jackson contended that the land was enclosed by a fence and was recognized as her property. On this appeal, Bell raises five issues.
First, Bell contends that in her complaint, Jackson failed to describe the land in question with the certainty required by Ala. Code 1975, § 6-6-541:
 "The complaint authorized by § 6-6-540 must describe the lands with certainty, must allege the possession and ownership of the plaintiff and that the defendant claims, or is reputed to claim, some right, title or interest in or encumbrance upon such lands and must call upon him to set forth and specify his title, claim, interest or encumbrance and how and by what instrument the same is derived and created." (Emphasis added).
We find from the record that an appendix was attached to the complaint; that appendix contained the following description:
"PARCEL 3
 "JACKSON PROPERTY BY ADVERSE POSSESSION OR ACQUIESCENCE
 "A part of the Northwest Quarter of the Southwest Quarter of Section 31, Township 24 North, Range 12 East, St. Stephens Meridian, in Bibb County, Alabama, being more particularly described as follows: As a POINT OF BEGINNING, start at an iron pipe accepted to mark the Northwest corner of the NW 1/4 of the SW 1/4 of said Section 31; thence run North 89 degrees 20 minutes 11 seconds East along the accepted North boundary of said NW 1/4 of the SW 1/4 for a distance of 291.12 feet to an iron pipe set at the intersection of a fence of long standing; thence run South 6 degrees 56 minutes 31 seconds West along said fence for a distance of 99.51 feet to an iron pipe set; thence run South 15 degrees 08 minutes 32 seconds West along said fence and its prolongation for a distance of 216.99 feet to a spike set in the center of a paved road; thence run North 50 degrees 34 minutes 43 seconds West along the center of said paved road for a distance of 27.61 feet to a spike set on the prolongation of a fence of long standing; thence run South 16 degrees 50 minutes 46 seconds West along said fence for a distance of 372.68 feet to an iron pipe set; thence run South 16 degrees 11 minutes 03 seconds West along said fence for a distance of 345.69 feet to a point on the accepted West boundary of the NW 1/4 of the SW 1/4; thence run North 0 degrees 11 minutes 30 seconds East along said West boundary for a distance of 976.01 feet to the POINT OF BEGINNING, containing three and thirty-four hundredths (3.34) acres."
We hold that this metes and bounds description of the property, attached as an appendix to the complaint, fulfilled the requirements of § 6-6-541.
Second, Bell contends that the trial judge impermissibly shifted the burden of proof in this action to him. We disagree.
 "The burden is not on either party as to the true location of the line in the sense that if the evidence is equally balanced he loses the controversy. While the bill sets out complainant's contention as to the location of the true line, the primary burden which complainants carry is to sustain the allegations showing the controversy, and that a situation exists which invokes the equity power of the court to find and fix the location of the line in dispute. . . . If complainants do not satisfactorily show that their contention is correct as to the true line, the cause is not due to be dismissed, nor does it necessarily result in finding according to the contention of respondent; but the court will proceed to find the true line, whether it is as either party contends."
Stansell v. Tharp, 245 Ala. 270, 273, 16 So.2d 857, 858-59
(1944).
We hold that the trial judge did not shift the burden of proof in this case. No presumption attends any party's designation of the boundary line, and the question *Page 44 
of where the true boundary lies is one for the trial judge.
 "As between coterminous landowners where a question of boundary line is presented, when parties agree upon the location of a line fence or one of them proceeds to enclose his property and erects a fence intended as a line fence and holds actual and exclusive possession to it as such, his possession is adverse and if continued for ten years ripens into title."
Mardis v. Nichols, 393 So.2d 976, 978 (Ala. 1981), quotingSalter v. Cobb, 264 Ala. 609, 88 So.2d 845 (1956).
Bell's third through fifth arguments all relate in some way to the proof presented in this case. Our rule of review in cases such as this one is well settled.
When evidence is presented ore tenus in a boundary line dispute, the trial court's judgment establishing the boundary is presumed correct and need only be supported by credible evidence. Hodge v. Snider, 495 So.2d 539, 540 (Ala. 1986). The ore tenus rule, which on appeal accords a presumption of correctness to a trial court's findings, is particularly strong in boundary line disputes and adverse possession cases, and the presumption is further enhanced if the trial court personally views the property in dispute. Wallace v. Putman,495 So.2d 1072, 1075 (Ala. 1986).
In the case at bar the trial judge heard ore tenus evidence and viewed the property. Therefore, if there is credible evidence in the record to support his judgment establishing the boundary, his judgment is due to be affirmed.
The trial judge issued a written order in which he recited facts from the case that supported his judgment. We have examined the record and we find his statements regarding the evidence to be supported. We also find the following credible evidence from the record that supports the trial judge's decision: A survey, made by a duly licensed surveyor, showing the boundaries of the land in dispute; testimony from witnesses that the fence was the boundary between the two parcels of land, that the fence had existed in its present location for over 30 years, and that the fence divided land that is very different in nature, one side being thick woods and the other cleared pastureland; and testimony from the man that maintained the land that the fence had been maintained by Jackson's predecessor in interest for 50 years and had been considered the property of Jackson's predecessor, that he had picked up pecans on the land with permission of Jackson's predecessor for over 50 years, that he had fished in a pond on the land with permission of Jackson's predecessors, that he had cleared brush on the land for seven years, and that he had planted and cultivated soybeans and other crops on the land. Another witness testified that she had lived on the land and was familiar with it, that the fence had been considered the boundary line between the parcels since at least 1930, and that the land had been used for grazing cattle and growing crops by Jackson's predecessors in interest until they transferred the land to Jackson.
Based on this evidence, the judgment of the trial court is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, BEATTY and HOUSTON, JJ., concur. *Page 191